# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Sharilyn Haggenmiller,

                          Plaintiff,

v.

ABM Parking Services, Inc.,

                          Defendant.

Civ. No. 14-868 (RHK/FLN)
**MEMORANDUM OPINION AND ORDER**

Christopher D. Jozwiak, Joni M. Thome, Matthew S. Nolan, Baillon Thome Jozwiak & Wanta LLP, Minneapolis, Minnesota, for Plaintiff.

Corie J. Tarara, Gregory L. Peters, Seaton, Peters & Revnew, PA, Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

In this action, Plaintiff Sharilyn Haggenmiller alleges her former employer, ABM Parking Services ("ABM"), discriminated against her on the basis of age (Count I) and disability (Count III), in violation of the Minnesota Human Rights Act, Minn. Stat. §§ 363A.01 *et seq.*, and retaliated against her for seeking workers' compensation (Count II), in violation of Minn. Stat. § 176.82. ABM now moves for summary judgment on all three counts; for the following reasons, its Motion will be granted.

## BACKGROUND

The facts are recited in the light most favorable to Haggenmiller:

ABM is a national parking-management company. (Tarara Aff., Ex. A, 1.) In 2004, it contracted with the Metropolitan Airport Commission ("MAC")—which owns, operates, and maintains the Minneapolis-St. Paul International Airport ("MSP") (Id., Ex.

A)—to provide parking services at MSP. (Id., Ex. A, 1.) After its contract expired, it continued to provide parking services at MSP on a month-to-month basis. (Id., Ex. A, 1.)

Haggenmiller worked for ABM at MSP from August 2004 until her employment was terminated on May 31, 2013. (Haggenmiller Dep., 31; Thome Decl., Ex. 6.) She started as an HR assistant but eventually moved to the auditing department. (Haggenmiller Dep., 31.) In that role, she was responsible for various tasks, including auditing parking tickets, maintaining records, entering data, answering phones, counting money, and updating the bulletin board. (Id., 42-45, 90-95.)

About ten years before Haggenmiller began working at ABM, she was diagnosed with congestive heart failure. (Id., 21-22.) This made her winded, sweaty, and quickly tired when walking. (Id., 265.) Medical records from a 2011 trip to the hospital indicated no evidence of congestive heart failure but noted she had gastro-esophageal reflux and dyslipidemia. (Tarara Aff., Ex. D.) Haggenmiller never asked ABM for an accommodation for her heart problems. (Haggenmiller Dep., 266.) She did, however, fill out a worker's compensation form after she tripped on a box at work and fell one Friday in April 2013. (Id., 37-39, 196.) She saw a doctor, iced her injury, and returned to work on Monday. (Id., 196.)

In June 2012, realizing its contract with ABM had expired and the parties were operating on a month-to-month basis, MAC hired an outside firm, Lumin Advisors ("Lumin"), to audit the parking operations at MSP. (Tarara Aff., Ex. P, at ABM-SJH0136; id., Ex. Q.) Lumin presented its analysis and recommendations to MAC in February 2013. (Id., Ex. K.) One recommendation was to eliminate Haggenmiller's

2

position (Administrative Assistant/Auditor) because technology changes made it unnecessary. (Id., Ex. K, at MAC000019.) It also recommended eliminating the position of accounting clerk. (Id., Ex. K, at MAC000019.)

MAC began working to implement Lumin's recommendations. It issued a memo in April 2013 stating the upcoming request-for-proposals for a long-term parking-services contract at MSP would include 100% of Lumin's recommendations. (Id., Ex. R, at ABM-SJH0149.) A MAC representative twice communicated with ABM via email about Haggenmiller's position, first telling ABM to eliminate it (id., Ex. J), and then affirming its approval to eliminate it "in light of changing staff demands for customer service in the ramps and your improving use of technology in your MSP operation." (Thome Decl., Ex. 7.) MAC also gave ABM permission to move Haggenmiller to another position as long as it was not newly-created for her. (Frankhauser Dep., 59.) MAC understood ABM's administrative assistant/auditor and accounting clerk positions would be eliminated by May 31, 2013, allowing time for ABM to follow its internal termination procedure. (Tarara Aff., Ex. J.)

Greg Frankhauser, ABM's general manager at MSP, requested approval from ABM's corporate human resources (HR) office in Cleveland, Ohio, to terminate Haggenmiller's employment; he received it on May 30, 2013. (Thome Decl., Ex. 12.) ABM terminated Haggenmiller's employment the next day. (Id., Ex. 6.) In Haggenmiller's Termination Review Form, Frankhauser indicated she was not disabled and not on worker's compensation, and he checked the box under "reason for termination" labeled "any layoff or job elimination." (Sandeberg Aff., Ex. O.) He wrote

3

on the Form that as a result of Lumin's study, MAC instructed ABM to eliminate Haggenmiller's position because it "had no impact on the parking operation." (Id., Ex. O.) Following her employment termination, Haggenmiller did not get another position at ABM, even though, according to her, there were numerous openings for which she was qualified. (Thome Decl., Exs. 7, 14, & 16.)

Haggenmiller, born in 1949, and Monica Martinson, whose employment was terminated the same day, were the two oldest employees working in the ABM office at MSP. (Haggenmiller Dep., 12, 72-73.) ABM's HR representative at MSP, Beth Sandberg, testified that it "cross[ed] [her] mind" that ABM was letting go its two oldest employees in the office. (Sandberg Dep., 32-33.) After Haggenmiller and Martinson left ABM, one remaining employee was in her late 20s/early 30s, one was in her 40s, four were in their early 50s, three were in their mid-50s, and one was in her early 60s. (Thome Decl., Ex. 13; Tara Aff., Ex. C, at 9; Martinson Dep., 51; Haggenmiller Dep., 105.) Though she has no memory of discussing it, Haggenmiller's short-term (1-2 year) goal in her September 2011 performance review was to "work until retirement." (Haggenmiller Dep., 64; Thome Aff., Ex. 2.)

After Haggenmiller's position was eliminated, some of the tasks she used to do no longer existed (e.g., faxing) or were done automatically (e.g., counting money and preparing bank deposit slips). (Tarara Aff., Ex. C.) The rest of her tasks were distributed among the remaining employees. For example, various employees order stamps and uniforms, make the coffee, update the bulletin board, and pick up the mail, and the auditors prepare their own paperwork and audit without additional help. (Id., Ex. C.)

4

Haggenmiller filed this action in state court on March 6, 2014, alleging age discrimination, worker's compensation retaliation, and disability discrimination, all in violation of Minnesota law. ABM removed the case to federal court on March 28, 2014, and filed the instant Motion for summary judgment on March 20, 2015. The Motion has been fully briefed and is now ripe for disposition.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009). ABM bears the burden of showing that the material facts in the case are undisputed. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to Haggenmiller. Beard v. Banks, 548 U.S. 521, 529-30 (2006); Weitz Co. v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009). Haggenmiller may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c)(1)(A); Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013).

## ANALYSIS

*1. Age Discrimination*

Haggenmiller first claims she was fired because of her age in violation of the Minnesota Human Rights Act ("MHRA"). The statute provides that "it is an unfair

employment practice for an employer, because of . . . age to . . . discharge an employee." Minn. Stat. § 363A.08, subd. 2. In an age-discrimination case where, as here, there is no direct evidence of age discrimination, the McDonnell Douglas burden-shifting analysis applies. Mittelstadt v. Emergency Physicians Prof'l Ass'n, No. A08-0879, 2009 WL 1047903, at *3 (Minn. Ct. App. April 21, 2009). First, Haggenmiller must make a prima facie case of discrimination. In a reduction-in-force case such as this, she must show 1) she was a member of a protected group; 2) she met applicable job qualifications; 3) she was discharged; and 4) there is evidence that age was a factor in the termination.[1] Dietrich v. Canadian Pacific Ltd., 536 N.W.2d 319, 324-25 (Minn. 1995); accord Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1165-66 (8th Cir. 1985). Then, ABM must proffer a legitimate, non-discriminatory reason for Haggenmiller's termination. Sigurdson v. Isanti Cnty., 386 N.W.2d 715, 720 (Minn. 1986). Finally, Haggenmiller must show that reason is a pretext for age discrimination. Id.

The Court need not consider Haggenmiller's prima facie case, because, even assuming she satisfies it, her claim fails on the third prong of McDonnell Douglas. ABM proffers a legitimate reason for terminating her employment. Following a thorough analysis of the parking services at MSP, Lumin recommended ABM eliminate Haggenmiller's position. A MAC representative told Frankhauser to do so, and

---

[1] As Dietrich v. Canadian Pacific Ltd. makes clear, a reduction-in-force has occurred "when business considerations cause an employer to eliminate one or more positions within the company." 536 N.W.2d 319, 324 (Minn. 1995). There is no dispute Haggenmiller's position was eliminated for business reasons following Lumin's analysis: Haggenmiller acknowledges that Lumin recommended eliminating the position she occupied, disputing only that this meant Lumin recommended firing *her*. (Pl. Opp'n Mem., 18.)

Frankhauser explained in Haggenmiller's Termination Review Form that she was fired on MAC's instructions following Lumin's study. Moreover, ABM needed to follow Lumin's recommendation to be competitive for the upcoming long-term parking contract: MAC's request-for-proposals was to include 100% of Lumin's recommendations.

In response, Haggenmiller fails to create a genuine issue of material fact that this reason was pretextual. She can demonstrate ABM's justification was pretext by showing it has no basis in fact or by showing that age discrimination more likely motivated her termination. Chambers v. Travelers Cos., Inc., 668 F.3d 559, 567 (8th Cir. 2012). Ultimately, she must identify facts showing that ABM intentionally discriminated against her on the basis of age. Sigurdson, 386 N.W.2d at 720.

Haggenmiller tries to both discredit ABM's justification and to show evidence of age discrimination, but both tactics fail. Her argument to discredit ABM's justification comes in two parts. She first argues that ABM did not rely on Lumin's recommendation when it fired her because Lumin merely recommended eliminating her *position*, not firing *her* in particular. But this draws too fine a distinction. Logic dictates that when a position is cut, the person who occupied that position loses her job, because it no longer exists. Courts implicitly recognize this, e.g., Krumwiede v. Mercer Cnty. Ambulance Serv., Inc., 116 F.3d 361, 362 (8th Cir. 1997) (plaintiff was terminated when her position was eliminated), and Haggenmiller points to no cases supporting her parsing of the issue. Moreover, Haggenmiller was the only person in her position (Tarara Aff., Ex. K, at MAC000019); to follow Lumin's recommendation to eliminate that position, ABM had to fire *her*.

7

Haggenmiller attempts to buttress her argument by claiming that ABM's failure to transfer her to a different job at the company shows they were terminating *her*, not just eliminating her *position*. Implicit in this claim is that ABM had a duty to find Haggenmiller another job. But Haggenmiller cites no law, and the Court is not aware of any, requiring a company to find a new job for an employee whose position has been eliminated.[2] In fact, courts have held that under the Age Discrimination in Employment Act, the employer does *not* have a duty to find a new position for an employee whose position was eliminated. Taylor v. Canteen Corp., 69 F.3d 773, 780 (7th Cir. 1995) ("[A]n employer incurs no duty to transfer an employee to another position when it reduces its work force for economic reasons.") (citing cases from the 6th, 9th, and 11th Circuits); see Reynolds v. Land O'Lakes, Inc., 112 F.3d 358 (8th Cir. 1997) (not mentioning a legal duty to the contrary when deciding that company policy did not mandate employer identify a new position for employee who was fired for business reasons). That ABM did not find a new job for Haggenmiller does not show that it fired *her* for reasons other than that her position was eliminated.

Haggenmiller's second major argument—evidence shows she was fired because of her age—is no less availing. She identifies six facts she claims show age discrimination, but in the Court's view, no reasonable jury could conclude that from her evidence.

First, Haggenmiller suggests not getting transferred to a different position at ABM shows she was fired because of her age. In Doerhoff v. McDonnell Douglas Corp., 171

---

[2] Haggenmiller does not bring a claim of failure to transfer to a different position, which is a "distinct cause of action." Doerhoff v. McDonnell Douglas Corp., 171 F.3d 1177, 1180-81 (8th Cir. 1999).

F.3d 1177, 1180-81 (8th Cir. 1999), however, the Court held that a company's failure to transfer the plaintiff after a layoff did not show age discrimination because there was no evidence the plaintiff had applied for another position. Although she claims jobs were available, she points to no evidence that she applied for any of them.

Second, Haggenmiller claims the fact that the two employees fired on May 31 were the oldest in the office shows age discrimination. But that argument fails in context. Nine of the ten people in the office after her termination were 40 or older, and eight were 50 or older; that is, nearly *everybody* was around the same age as Haggenmiller. Moreover, the ABM workforce was not meaningfully younger once she left. Ninety one percent of workers were over 40 before her termination and 90% were after. See EEOC v. McDonnell Douglas Corp., 191 F.3d 948, 952 (8th Cir. 1999) (finding that the difference between 14.7%, before, and 13.6%, after, an insignificant difference).

Third, Haggenmiller contends younger workers took over her duties. But she was not *replaced* by a younger worker. Her position was *eliminated*, and her work was automated, eliminated, or distributed among various employees. She cannot show age discrimination simply because numerous younger people took over some of her duties. See Ward v. Int'l Paper Co., 509 F.3d 457, 462 (8th Cir. 2007).

Fourth, Haggenmiller argues that the goal on her 2011 performance review to "work until retirement" shows age discrimination, particularly because the timeframe for achieving that goal, 1-2 years, aligned with the timing of her termination in 2013. But Delana Gerten, who wrote the performance review, did not participate in Haggenmiller's termination; Frankhauser, Sandeberg, and an HR representative in Cleveland did. A

9

comment by a non-decisionmaker is not evidence of age discrimination. <u>Herrero v. St. Louis Univ. Hosp.</u>, 109 F.3d 481, 484 (8th Cir. 1997). Furthermore, this comment was made two years before Haggenmiller was fired, well before the termination process began. <u>Id.</u> ("Statements may constitute evidence of impermissible motive only when they are made by decisionmakers in the termination process.").

Fifth, Haggenmiller claims ABM admitted she was a good worker and was qualified for various positions at the company. Even if true, that does not show her termination was due to her *age*. In fact, in the Court's view, it suggests ABM *regretted* firing her and only did so because of the Lumin study.

Finally, Haggenmiller identifies testimony by Frankhauser and Sandberg that she claims show age discrimination. Frankhauser would not comment in his deposition on whether the termination was fair, but that says nothing about whether there was age discrimination. Sandeberg said it crossed her mind that ABM was firing its two oldest employees. But that does not show that ABM fired Haggenmiller *because* she was old. It simply shows that Sandeberg understood the image the termination might present. "[A]n expression of concern" when an age-protected employee is fired "should not be equated with an admission of age-related animus . . . but rather should be regarded as a natural reaction to the ever-present threat of litigation attendant upon terminating an age-protected employee." <u>Bashara v. Black Hills Corp.</u>, 26 F.3d 820, 824 (8th Cir. 1994).

In the Court's view, no reasonable jury could conclude from this evidence that ABM's proffered reason was simply a pretext and the real motivation was age discrimination. The Court will therefore grant summary judgment to ABM on Count I.

*2. Workers' Compensation Retaliation*

Haggenmiller's second claim is that she was fired in retaliation for filing a workers' compensation claim. Minn. Stat. § 176.82 provides that "[a]ny person discharging . . . an employee for seeking workers' compensation benefits . . . is liable in a civil action." Here, as there is no direct evidence that ABM fired Haggenmiller in retaliation for seeking workers' compensation, the McDonnell Douglas burden-shifting analysis again applies. Miller v. Certain Teed Corp., 971 F.2d 167, 171 (8th Cir. 1992); Randall v. N. Milk Prods., Inc., 519 N.W.2d 456, 459 (Minn. Ct. App. 1994). The analysis mirrors that of the age discrimination claim.

As before, assuming *arguendo* that Haggenmiller makes a prima facie case of retaliation, she cannot show ABM's legitimate reason for terminating her—Lumin's analysis and recommendation—was pretext. She again claims ABM's proffered reason is not credible, arguing the Lumin analysis recommended eliminating her *position*, not firing *her*, but the Court is not persuaded by that argument for the same reasons discussed above. She also argues a close temporal connection (42 days) between filing the claim and being fired shows she was fired in retaliation for filing a workers' compensation claim. (Tarara Aff. Ex. L.) But "a claim cannot survive summary judgment merely because an employee is terminated after filing a claim." Miller, 971 F.2d at 171. Moreover, Lumin recommended eliminating Haggenmiller's position in February, well *before* she filed her workers' compensation claim. In the Court's view, no reasonable jury could conclude from this timing alone that there was a link between her filing a claim for worker's compensation and being fired, id., and she identifies no other evidence

11

in the record connecting the two. Because she fails to point to facts from which a reasonable jury could conclude ABM's reason was pretext, the Court will grant summary judgment on Count II.

   *3. Disability Discrimination*

Finally, Haggenmiller claims she was fired because of a disability. Minn. Stat. § 363A.08 provides that "it is an unfair employment practice for an employer, because of . . . disability[,] . . . to discharge an employee." Again, the familiar McDonnell Douglas burden-shifting analysis applies, Hoover v. Norwest Private Mortg. Banking, 632 N.W.2d 534, 542 (Minn. 2001), and the analysis here mirrors that of the two previous claims.

The parties dispute whether Haggenmiller has a disability; Haggenmiller claims it is congestive heart failure. But even assuming Haggenmiller is disabled, and assuming she makes her prima facie case, she again fails to survive summary judgment because she cannot demonstrate that ABM's legitimate reason for firing her was a pretext. She makes three arguments on the issue of pretext. First, she continues to argue ABM's proffered reason only explains why her *position* was eliminated, not why *her* employment was terminated; this argument remains unpersuasive for the reasons explained above. Second, she asserts that people at ABM knew she had congestive heart failure. But she points to no evidence in the record supporting this assertion, and the Court will not rely on mere allegations at the summary judgment stage. Wood, 705 F.3d at 828. Third, she claims that Martinson—the woman whose employment was terminated the same day as Haggenmiller's—was treated poorly after having a stroke. But Haggenmiller admits that

12

*she* (Haggenmiller) "did not notice *herself* being treated differently during the course of her employment because of her disability." (Pl. Opp'n Mem. 23) (emphasis added). Haggenmiller has identified no evidence from which a reasonable jury could conclude she was fired because of a disability, and the Court will grant summary judgment on Count III.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 27) is **GRANTED** and Plaintiff's Complaint (Doc. No. 1, attachment 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Date: August 19, 2015

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge
